OPINION
{¶ 1} Appellant, via the Holmes County Child Support Enforcement Agency ("HCCSEA"), appeals the decision of the Holmes County Court of Common Pleas, stemming from a child support contempt action brought against Appellee Samuel D. Sandoval. The relevant facts leading to this appeal are as follows.
 {¶ 2} On January 17, 1986, the Second Judicial District Court of Bernalillo County, New Mexico, granted Appellant Susan A. Mellinger and Appellee Samuel D. Sandoval a final divorce. The divorce decree established a child support order under which appellee was to pay $550 per month, plus provide medical and dental insurance for the parties' child, Samuel, born in 1982. It was also ordered that "[s]upport shall cease when the child reaches the age of eighteen or is otherwise emancipated, whichever occurs first." At some point, Susan moved out of New Mexico with the child. In 1988, appellee also left New Mexico, relocating first to Ottawa County, Ohio. Neither party has chosen to move back to New Mexico since that time.
 {¶ 3} In 1989, at which time Susan and the parties' child were living in Cortland, New York, the Ottawa County, Ohio, Court of Common Pleas began enforcement of the New Mexico support order upon a petition filed by Susan under the former Uniform Reciprocal Enforcement of Support Act ("URESA"). The original petition requested, per a checked box, the following: "Enforce order for support." On April 3, 1989, Ottawa County Court of Common Pleas issued an order for appellee to pay $550 per month, plus poundage, through the Ottawa County CSEA, and to pay an $1100 arrearage by a date certain. Over the next several years, appellee repeatedly failed to pay his support obligation as ordered by Ottawa County, resulting in contempt proceedings. In November 1991, appellee was found in contempt in Ottawa County, and was given six months to purge said finding. On May 27, 1994, appellee was found in contempt a second time.
 {¶ 4} In late 1994, Susan moved to Pennsylvania. On March 8, 1995, the Ottawa County Court of Common Pleas ordered that the case be transferred, intrastate, to the Holmes County Court of Common Pleas based on appellee's relocation to Millersburg, Ohio. In September 1995, HCCSEA took steps to conduct an administrative review of the parties' child support order. HCCSEA obtained updated wage and income information, and on November 30, 1995, issued an "Administrative Review Recommendation," in which a child support obligation of $996/month was calculated. Although appellee apparently obtained counsel, who notified HCCSEA of appellee's intent to contest any increase in support, appellee did not pursue either an administrative hearing or court hearing to further review the matter. On January 8, 1996, the trial court issued a judgment entry accepting the administrative review modification and ordering an increase in child support from $550/month to $996/month.
 {¶ 5} Contempt proceedings were conducted in Holmes County several months thereafter, resulting in a contempt finding by the trial court on August 20, 1996. On December 22, 2000, Samuel turned eighteen. On May 10, 2001, HCCSEA filed another contempt motion and a request for a lump sum judgment. However, on June 6, 2001, prior to a hearing on said motion, the magistrate approved an entry finding Samuel would become emancipated on June 15, 2001. The trial court approved same. The matter of contempt was set for final hearings before the magistrate on October 15, 2001 and November 26, 2001. Appellee therein argued, inter alia, that his support obligation should have terminated upon Samuel's eighteenth birthday. Both sides thereafter submitted written closing arguments and supplemental briefs.
 {¶ 6} On February 22, 2002, the magistrate issued a decision recommending a vacation of the $996/month child support order of January 1996, holding that the neither the Ottawa County nor Holmes County Courts of Common Pleas ever had subject matter jurisdiction to modify the original $550/month support order. The magistrate further ordered HCCSEA to cease all enforcement activities on the case. HCCSEA filed an objection to the magistrate's decision on March 8, 2002. On July 12, 2002, the trial court issued a judgment entry overruling HCCSEA's objection. HCCSEA timely filed a notice of appeal therefrom, and herein raises the following four Assignments of Error:
 {¶ 7} "I. The trial court erred when it rendered the 1996 child support order void through the application of the full faith and credit for child support orders act (FFCCSOA) and determined that the court did not have subject matter jurisdiction to modify the child support order in this case to the prejudice of the plaintiff, Susan A. Mellinger and her son Samuel Anderson.
 {¶ 8} "II. The trial court erred as a matter of law when it concluded that the New Mexico divorce decree was not `registered' in the state of Ohio.
 {¶ 9} "III. The trial court erred to the prejudice of the plaintiff, Susan A. Mellinger[,] when it concluded as a matter of law through the application of FFCCSOA that the defendant's, Samuel D. Sandoval's[,] child support obligation terminated upon his son's eighteenth birthday.
 {¶ 10} "IV. The trial court committed an abuse of discretion when it concluded that the defendant, Samuel D. Sandoval[,] was not in contempt of the court's order."
 I., II. {¶ 11} In her First and Second Assignments of Error, appellant argues the trial court erred in rendering the 1996 support order void and in concluding the New Mexico decree was never registered as a foreign order in Ohio. We disagree.
 {¶ 12} The magistrate in the case sub judice found the $550/month New Mexico order became enforceable in Ohio as a "traditional" URESA action pursuant to former R.C. 3115.27. However, the magistrate distinguished these events from the procedures for registration of a foreign order (former R.C. 3115.32(E)), finding that the original URESA action request form sent by the New York child support authorities in 1989 asked for enforcement of the order, not registration. The magistrate then looked at the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"), Section 1738B(e), Title 28, U.S. Code, which prohibits a court of one state from modifying a child support order issued by a court of another state unless:
 {¶ 13} "(1) the court has jurisdiction to make such a child support order * * * and
 {¶ 14} "(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or (B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction * * *."
 {¶ 15} The magistrate also emphasized 28 U.S.C. § 1738B(f)(1) and (f)(5), which state as follows:
 {¶ 16} "(1) If only 1 court has issued a child support order, the order of that court must be recognized. * * * (5) The court that has issued an order recognized under this subsection is the court having continuing, exclusive jurisdiction under subsection (d)."
 {¶ 17} The magistrate concluded:
 {¶ 18} "Thus, the courts of Ohio were without jurisdiction under the FFCCSOA to modify the New Mexico child support order because the order was never registered in Ohio as required by subsection (i), and the New Mexico court retained continuing, exclusive jurisdiction over the matter of child support under subsection (f)(1) and (5) until and unless the New Mexico order was registered in another state with jurisdiction over Dr. Sandoval." Magistrate's Decision at 12.
 {¶ 19} The Ohio Supreme Court has held that "[t]he amount of support ordered in an initial proceeding under [URESA] must conform to the amount determined in a previous divorce case[.]" County of San Diegov. Elavsky, (1979) 58 Ohio St.2d 81, paragraph one of the syllabus. In a traditional URESA proceeding, therefore, Ohio courts lacked subject matter jurisdiction to modify support obligations established in the initiating court's orders. Smith v. Smith, 2003-Ohio-1478, Summit App. No. 21204, citing Walker v. Amos (2000), 140 Ohio App.3d 32, 38,746 N.E.2d 642.
 {¶ 20} Returning to FCCSOA, we note subsection (c) directs as follows:
 Requirements of child support orders. — A child support order made by a court of a State is made consistently with this section if—
 (1) a court that makes the order, pursuant to the laws of the State in which the court is located and subsections (e), (f), and (g)—
 (A) has subject matter jurisdiction to hear the matter and enter such an order; and
(B) has personal jurisdiction over the contestants; and
 (2) reasonable notice and opportunity to be heard is given to the contestants. (Emphasis added.)
 {¶ 21} Thus, in the case sub judice, even though it is undisputed that obligor, obligee, and child left the state of New Mexico years ago (28 U.S.C. § 1738B(e)(2)(A), supra), we concur with the trial court's conclusion that Ohio never obtained subject matter jurisdiction to modify the original $550/month order (28 U.S.C. § 1738B(e)(1)), rendering the $996/month order of January 8, 1996 void ab initio. Furthermore, subject matter jurisdiction may not be conferred by consent or acquiescence of the parties. See, e.g., State ex rel. Easterday v. Zieba
(1991), 58 Ohio St.3d 251, 256. Although HCCSEA suggests that the lack of a request to "register" in the 1989 URESA petition to Ottawa County should be deemed as de minimus, we are not inclined to do so. AccordMcClure v. McClure (1997), 119 Ohio App.3d 76, 81. The former URESA statutory scheme explicitly described registration as an "additional remedy" pursuant to former R.C. 3115.32(A). Walker, supra,140 Ohio App.3d at 38.
 {¶ 22} We note Ohio enacted its version of the Uniform Interstate Family Support Act ("UIFSA") on January 1, 1998; however, we are limited under these facts to an analysis of URESA, its unfortunate shortcomings notwithstanding. Although we do not herein speculate on the outcome of this matter had UIFSA been in place in Ohio earlier, as we noted inStansbury v. Stansbury (Aug. 9, 1999), Licking App. No. 99CA9, the frustration of URESA's intended goals due to the registration of foreign orders as if they had originated in Ohio is one of the reasons the General Assembly adopted UIFSA.
 {¶ 23} Appellant's First and Second Assignments of Error are overruled.
 III. {¶ 24} In her Third Assignment of Error, appellant argues the trial court erred in finding Samuel emancipated at age eighteen pursuant to FFCCSOA. We disagree.
 {¶ 25} The FFCCSOA states at 28 U.S.C. § 1738B(h)(1) and (2):
 {¶ 26} "(1) In general. — In a proceeding to establish, modify, or enforce a child support order, the forum State's law shall apply except as provided in paragraphs (2) and (3).
 {¶ 27} (2) Law of State of issuance of order. — In interpreting a child support order including the duration of current payments and other obligations of support, a court shall apply the law of the State that issued the order."
 {¶ 28} The magistrate in the case sub judice thereby took on the unenviable task of applying New Mexico law on the issue of emancipation. The magistrate reviewed New Mexico statute NMSA 40-4-7 and corresponding caselaw to conclude that the applicable law for a 1986 divorce in that state required support only so long as the subject child remained a minor; i.e., until age eighteen. We find no error in the trial court's acceptance of said analysis.
 {¶ 29} In addition, appellant further argues that support should continue for Samuel based on evidence that he is potentially disabled. Nonetheless, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. The evidence provided at the hearings in the case sub judice included the following colloquy between Susan and HCCSEA counsel:
 "Q. Do you think he could fully support himself based on his conditions as they stand at this time?
 "A. I'm trying to separate out the emotion from the intellectual. There's part of me that wants to say `of course he can.' I've raised him and I'm proud of him, and I know he can do things if he puts his mind to it. And then I can separate out and I'm saying, `I'm afraid. I'm afraid that he won't be able to.'
"Q. So you're testifying you're just not sure at this point?
"A. What the future's going to bring. I don't know." Tr. at 91.
 {¶ 30} We are therefore persuaded that the trial court's decision in this regard was supported by competent, credible evidence.
 {¶ 31} Appellant's Third Assignment of Error is overruled.
 IV. {¶ 32} In her Fourth Assignment of Error, appellant argues the trial court erred in declining to find appellee in contempt of court. We disagree.
 {¶ 33} The trial court, based on its determination that the $996/month order was void ab initio, concluded no arrearages existed against appellee. Based on our holdings overruling the above Assignments of Error, we no error by the trial court prejudicial to appellant as to the resolution of the contempt motion. See App.R. 12(B).
 {¶ 34} Appellant's Fourth Assignment of Error is overruled.
 {¶ 35} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Holmes County, Ohio, is hereby affirmed.
By: Wise, J., Farmer, P.J., and Boggins, J., concur.
Topic: Interstate child support issues.